IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOYCE MILILLO | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | NO.   14-3143 |
| | : | |
| THOMAS JEFFERSON UNIVERSITY | : | |
| HOSPITALS, INC. | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE                                          October 13, 2015
UNITED STATES MAGISTRATE JUDGE


I.      INTRODUCTION

Plaintiff, Joyce Milillo ("Milillo"), has brought this action against her former employer,

Jefferson University Hospitals, Inc. ("Jefferson"), asserting that her rights under the Age

Discrimination in Employment Act ("ADEA") (Count I), the Family Medical Leave Act

("FMLA") (Count II), and the Pennsylvania Human Relations Act ("PHRA") (Count III) were

violated when she was not offered a position in the University's reorganized Accounts Payable

Department.   Discovery has been completed and Jefferson has brought this Motion for Summary

Judgment (Doc. 23).

By its motion, Jefferson asserts that there is no genuine issue of material fact which would

support an age-based claim for discrimination under the ADEA or PHRA or for retaliation under

the FMLA.   (Doc. 23 at 1.)[1]   Jefferson asserts that "at bottom, there is simply no evidence on any

---

[1]  Ms. Milillo has advised us that she is not proceeding with her FMLA interference claim.   (Doc.
25 at 31, n.9.)

level that Milillo's age or FMLA use played any role . . . in the University's decision to not offer

her a position in the reorganized [Accounts Payable] Department."   (Doc. 23 at 2-3.)[2]   Plaintiff

has presented an extensive opposition to the motion, challenging Jefferson's assertions.   (Doc.

25.)   Jefferson has replied to this opposition.   (Doc. 26.)   The matter, having been fully briefed

with substantial support, is now ripe for resolution.

## II.     UNDISPUTED MATERIAL FACTS

We glean from the papers submitted that the contours of this case are not in significant

dispute.   Ms. Milillo worked at the Methodist Hospital Division ("Methodist") in the Jefferson

system from 2000 to 2011.   (Doc. 25 at 2.)   She was hired as an Accounts Payable Clerk at age

49.   (*Id.*)   There were no difficulties with the adequacy of her performance until December 2011

when she was transferred to Jefferson's Center City Campus.   (*Id.* at 2-3.)   At that time, she held

the position of Accounts Payable Supervisor having been promoted in 2009.   Shortly before that

transfer, Jefferson transitioned to a new accounts payable software system called ASCENT. This

system was unlike the system Ms. Milillo and the Methodist Accounts Payable Department were

using at that time.   (Doc. 23 at 8, Doc. 25 at 3.)

At the time of her transfer, Ms. Milillo was 60 years old.   (Doc. 25 at 3.)   She maintained

her Methodist job title and pay rate, but performed the job of Problem Resolution Clerk in the

Match Audit department at Jefferson's Center City location.   (*Id.* at 4.)   Her direct supervisor

was Crystal High (age 45).   (*Id.*)   Ms. High reported to Mary Stanley (age 51), Accounts Payable

---

[2] It appears that the defendant is not seriously contesting the question of whether she was "qualified" and indeed on page 17 of its opposition, states specifically that Ms. Milillo has "for the purposes of this motion" satisfied the first three prongs necessary to establish a *prima facie* case of ADA discrimination.   The second prong of that *prima facie* case is that she was qualified for the position.

Manager, who in turn reported to Shelly Johnson (age 36), Director of Accounts Payable, who reported directly to Ron Keller, Vice-President of Corporate Finance.   (*Id.* at 4-5.)

In December 2011 and January 2012, Ms. Stanley received several inquiries from vendors raising questions about Ms. Milillo's performance.   (Doc. 23 at 4.)   Ms. Stanley forwarded these e-mails to Ms. Milillo.   (Doc. 23-4 at 44-51, Doc. 23-5 at 2-14.)   This apparently led to a January 26, 2012 e-mail from Ms. Stanley to Human Resources Manager, Randy McLaughlin, where Ms. Stanley identified perceived work deficiencies and requested guidance from Mr. McLaughlin on how to proceed.   (Doc. 23-5 at 15.)   Mr. McLaughlin provided Ms. Stanley a template of a disciplinary letter by e-mail on January 30, 2012.   (*Id.* at 22.)

At the same time, Ms. Milillo was dealing with her husband's serious medical issues. (Doc. 25 at 6.)   She had frequently discussed these issues with Ms. Stanley.   (*Id.*)   Some two weeks before a scheduled February 7, 2012 surgery, she specifically discussed her need to take leave on February 7 and 8 to assist her husband.   (*Id.*)   She took her leave and on February 9 returned to work.   (*Id.*)   On that same day, Ms. Stanley gave her the written warning telling her that she had "made mistakes" and that her position was in "serious question."   (Doc. 25-5 at 34.) Ms. Milillo asserts that this was the first written discipline she had received as a Jefferson employee.   (Doc. 25 at 8.)

The parties appear to agree that there were problems with the rollout of the new ASCENT software system.   (Doc. 23-4 at 12.)   Suffice it to say, there are significant factual disputes as to the extent of that difficulty and the extent to which they affected the others in the Accounts Payable Department and not just Ms. Milillo.

On March 6, 2012, Ms. Milillo applied for intermittent FMLA leave.   (Doc. 23 at 8.)   She

3

was initially denied but reapplied at Ms. Stanley's suggestion.   (*Id.*)   She was then accepted. (Doc. 25 at 6.)   In support of her husband, she took seven days of FMLA leave in May, one day in July and one day in August.   (Doc. 23-4 at 7-9.)

During the same time period, Jefferson was discussing plans to reorganize the Accounts Payable Department.   (Doc. 25 at 12.)   This resulted in the July 12, 2012 notice to all Accounts Payable personnel that "it [was] necessary to reorganize our staffing structure."   (Doc. 25-5 at 44.)   The notice stated that all current employees had to reapply for jobs within the department by August 3, 2012 and that those employees would be advised of their status by August 10, 2012. (*Id.*)   On the day following that notification, Ms. Milillo received a performance evaluation which rated her as "unacceptable" in all 11 performance categories.   (Doc. 25-6 at 2-10.)   Ms. Milillo, who disagreed with the evaluation, has pointed out that her direct supervisor, Ms. High, who also disagreed with the evaluation, was not consulted.   (Doc. 25 at 13.)

Ms. Milillo applied for four positions in the reorganized department.   (*Id.* at 14.)   In her opposition papers, however, she discussed only her application to the Problem Resolution Clerk position.   Following Ms. Milillo's lead, we consider the specifics of her claims in the context of the Problem Resolution Clerk position.[3]   In the end, Jefferson hired two current employees and four external applicants for the position of Problem Resolution Clerk.   (Doc. 23 at 11-12.)   Ms. Milillo notes that these new hires were "four substantially younger individuals" and highlights their respective ages: two were 22 years old, one was 28 years old and one was 46 years old.

---

[3] We consider Plaintiff's failure to separately discuss the applications for the other positions an abandonment of these claims.   *See Seals v. City of Lancaster*, 553 F. Supp. 2d 427, 432-33 (E.D. Pa. 2008); *see also Hackett v. Cmty. Behavioral Health*, No. 03–6254, 2005 WL 1084621, at *6 (E.D.Pa. May 6, 2005) (failure to address claims waives opportunity to contest summary judgment on that ground).

(Doc. 25 at 18.)   Without contesting the ages of these four new employees, Jefferson points out

that, within the larger Accounts Payable Department, the reorganization resulted in the selection of

11 of 17 employees who were over 40, six of whom were older than or approximately the same age

as Plaintiff.   (Doc. 23 at 13.)

On August 6, 2012, Ron Keller, Vice President of Corporate Finance sent Shelley Johnson,

Director of Accounts Payable, a draft of the RIF Planning Form in an email.   (Doc. 25 at 14.)   In

that document, Ms. Milillo's name appears as one of four then-current employees not selected in

the department reorganization.   (*Id.*)   The final draft of the RIF Planning Form was sent to Mr.

McLaughlin on August 8, 2012.   (*Id.*)   On August 15, 2012, Ms. Milillo was given written notice

of her non-selection.   (*Id.* at 17.)

## III. PARTIES' CONTENTIONS

Jefferson asserts that its determination to not select Ms. Milillo for the Problem Resolution

Clerk position was due to her "poor customer service skills," as well as management's "concerns

about her ability to function effectively in the department" which was being reorganized to work

more effectively within the new ASCENT software system.   (Doc. 23 at 2.)   Ms. Milillo has

provided us with a robust response arguing that this rationale was nothing more than pretext for her

non-selection predicated upon factors of age and retaliation for exercising her protected FMLA

rights.   (Doc. 25.)   Upon consideration of all the materials submitted, we conclude that genuine

issues of material fact exist with respect to the reasons for her non-selection. We note initially the

inconsistency between the articulated rationale Jefferson provided in its motion papers and the

reasons stated in its August 15, 2012 non-selection letter, where nothing was said about her

performance and she was told only ". . . in these difficult economic times . . . Jefferson . . . like

many other businesses, has been required to make difficult financial decisions . . ." and that ". . . it has been determined that your position will be eliminated . . ." (Doc. 25-7 at 2.)   Ms. Milillo also raises questions about whether there are genuine issues of fact concerning her customer service skills and whether her ability to function well in the new department was as deficient as Jefferson claims.   Ms. Milillo points to her long period of satisfactory work performance before being transferred to the Center City location and the acknowledged difficulties with the move to the Center City location and the integration of the new software system.   (Jefferson's July 12, 2012 notice to "Accounts Payable Personnel" announcing the reorganization which referred to 2012 as being "a very challenging year" for the department requiring "a redesign of many of our long-standing business processes and practices") (Doc. 23-4 at 12.)

Ms. Milillo also notes the lack of specificity in the February 9, 2012 disciplinary notice that she received which articulated non-specific concerns over her "abilities to function as an Accounts Payable Supervisor," together with what, if anything, Jefferson did, or arguably did not do, to honor its commitment "to support her" in "correct[ing] these deficiencies."   (Doc. 25-5 at 34.)[4] Similarly, Ms. Milillo notes that the severity of her treatment, as compared to others in the Match Audit department, was striking, and points to the fact that she was the only one who received a written reprimand that her direct supervisor opposed, when others in the department were also having difficulties with the new system.   (Doc. 25 at 7-8.)

Raising questions of process, Ms. Milillo points out that there is a lack of clarity as to what factors were used to decide who would be selected (Doc. 25 at 15-17); who the actual decision-maker was (*Id.* at 35-36); what customer service issues other applicants had as compared

---

[4] While this notice is dated February 9, 2011, it appears that the parties agree that it actually was prepared and issued on February 9, 2012.

to her (*Id.* at 8);[5] why younger applicants were not tested on their computer skills (*Id.* at 15-16);

why the HR manager did not utilize his usual procedures in evaluating employee performance (*Id.*

at 42-45); why the mandatory disclosures used in the RIF process did not include older employees

who had left employment when reorganization was announced (*Id.* at 47-48); and ultimately, why

the Problem Resolution Clerk positions were filled by two current employees, ages 35 and 37

years old, and four external applicants, ages 22, 22, 28 and 46 years old.   (Doc. 23 at 11-12.)

## IV. DISCUSSION

### A.  Summary Judgment Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (a court must grant a motion for

summary judgment "after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial.").   An issue is "genuine" if the

evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A factual dispute is "material" if it might affect

the outcome of the case under governing law.  *Id.*   In reviewing the record before us, any

"inferences to be drawn from the underlying facts contained in such materials must be viewed in

the light most favorable to the party opposing the motion."  *United States v. Diebold, Inc.*, 369

U.S. 654, 655 (1962).

---

[5] She noted specifically, and by way of example, the positive feedback that she received from a
vendor who had previously expressed dissatisfaction with her work in the winter of 2011-2012, but
lauded her efforts in May 2012.   (Doc. 25-5 at 36.)

In an employment discrimination case, we must ascertain "whether. . .there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ. (Health Sciences Ctr.)*, 829 F.2d 437, 440 (3d Cir. 1987).   The Third Circuit has further explained, in the context of discrimination claims, "conclusory allegations of discrimination, in the absence of particulars, are insufficient to defeat summary judgment." *Taylor v. Cherry Hill Bd. of Educ.*, 85 F. App'x 836, 839 (3d Cir. 2004).

## B.  ADEA/PHRA Discussion[6]

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).   In *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), the Supreme Court explained "[t]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." *Gross*, 557 U.S. at 176. Thus, to meet this standard, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." (*Id.*)   The Supreme Court made clear that, "[u]nlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." (*Id.* at 174.)[7]

---

[6] We address the ADEA and PHRA claims together as the same legal standard applies to both. *See Kautz v. Met-Pro Corp.*, 412 F.2d 463, 466 n.1 (3d Cir. 2005).

[7] Plaintiff argues that the Supreme Court's recent case, *Burrage v. United States*, 134 S. Ct. 881 (2014), a case which grew out of a criminal prosecution, changes the strict but-for causation standard laid out in *Gross* into a more lenient one. Plaintiff contends that her burden is to show that age was *a* but-for cause of her non-selection and not *the* but-for cause of her non-selection. We do

Plaintiff has presented indirect evidence to infer discrimination based on her age. Accordingly, we apply the familiar burden shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).  *See Smith v. Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (reaffirming the use of the *McDonnell Douglas* standard in ADEA cases involving indirect evidence).   In order to establish a *prima facie* age discrimination case, Plaintiff must offer sufficient evidence from which a jury could determine that: (1) she belongs to a protected class (i.e., is forty years of age or older); (2) she was qualified for the position; (3) she suffered an adverse employment action despite being qualified; and (4) under circumstances that would raise an inference of discriminatory action, the employer continued to seek individuals with qualifications similar to the plaintiff's to fill the position.  *Sarullo v. U.S. Potal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

Here, Ms. Milillo has established that she was 60 years old at the time of her non-selection, thus, within a protected class under the ADEA. Further, Jefferson has conceded that she was qualified for the position and suffered an adverse employment action when she was not selected in the department reorganization.  (Doc. 23 at 17.)  Consequently, only the fourth prong of the *prima facie* case is contested and we continue our analysis of Plaintiff's *prima facie* case with that prong alone.

Once a plaintiff has established a *prima facie* case, the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection."

---

not agree with this reading of *Burrage*. But-for causation in an ADEA claim requires that age be the *determinative factor* in an adverse employment decision. Requiring any less than this, as Plaintiff urges, would render the test a "substantial" or "contributing" factor causation test, which the Supreme Court plainly rejected in *Gross*.

*McDonnell Douglas*, 411 U.S. at 802. At this stage, Defendant's burden is "relatively light."

*Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994).   Defendant must put forth "evidence which,

taken as true, would permit the conclusion that there was a non-discriminatory reason for the

unfavorable employment decision." *Id.*; *see Torre v. Casio, Inc.,* 42 F.3d 825, 829–30 (3d

Cir.1994) (applying *Fuentes* in an ADEA case).   Jefferson has satisfied its burden here by

producing evidence that it did not select Ms. Milillo due to her work performance, specifically her

"poor customer service" and failure to timely respond to third-party vendors and personnel within

Jefferson regarding invoices. The evidence is sufficient, if taken as true, to permit the conclusion

that this, and not age, was the real reason for Ms. Milillo's non-selection.

If the defendant meets this burden, the presumption of discriminatory action raised by the

*prima facie* case is rebutted and the plaintiff must establish that the employer's proffered reasons

were merely pretext for discrimination.   *McDonnell Douglas*, 411 U.S. at 804.   While Ms.

Milillo must ultimately show "but-for" causation at trial, the standard to survive summary

judgment is less stringent.   *Fuentes*, 32 F.3d at 763-64.   At the summary judgment stage, in order

to show pretext, Plaintiff "must point to some evidence. . . from which a factfinder could

reasonably. . . disbelieve [Jefferson's] articulated legitimate reasons." *Id.* at 764.   The plaintiff

bears the burden of persuasion at all times.   *Smith*, 589 F.3d at 690.

We have set out in above a recitation of those circumstances present here from Plaintiff's

perspective which we conclude requires a trial of Plaintiff's age discrimination claim.   We are

concerned initially with Jefferson's articulated basis for Ms. Milillo's non-selection ("Your

position will be eliminated") and that explanation's inconsistency with the reasons presented in

Defendant's Motion ("poor" customer service skills).   We are further concerned by the simple

10

fact that of the six of the persons "selected" for the position Ms. Milillo formerly occupied, three were under 30, two were between 30 and 40 and one was between 40 and 50.   We also take into account the evidence Plaintiff has developed with respect to the process and the undisputed fact of the "challenging" environment in which all were working.   We conclude from the papers before us that Ms. Milillo has met her burden of production with respect to the ADEA claim showing that a reasonable fact finder could disbelieve Jefferson's articulated reasons for her non-selection and conclude that she has sufficiently established a causal relationship between her age and her non-selection.   Jefferson's motion on the ADEA and PHRA claims is denied.

## C.  FMLA Retaliation Discussion

In order to make out a successful FMLA retaliation claim, Plaintiff must show that (1) she is protected under the FMLA, (2) she suffered an adverse employment action, and (3) the adverse action was causally related to the plaintiff's exercise of his or her FMLA rights.  *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009) (modifying *Conoshenti v. Public Service Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004)).   The Third Circuit further explained, "[b]ecause FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law. Accordingly, claims based on circumstantial evidence have been assessed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)…"  *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012

In its motion for summary judgment, Jefferson characterizes the FMLA retaliation claim as within the *McDonnell Douglas* pretext framework as opposed to the mixed-motive framework set out in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).   (Doc. 23 at 29-30.)   Plaintiff's

11

opposition indicates no disagreement with this characterization.   (Doc. 25.)   Indeed, Ms. Milillo

makes reference to pretext in one of her brief's sub-headers while disputing Jefferson's "legitimate

nondiscriminatory reason" for terminating her.   ("A jury could infer pretext for FMLA retaliation

because Defendant has shown a bias against employees who take FMLA leave.") (Doc. 25 at 48.)

We conclude that an analysis under the *McDonnell Douglas* framework applies to this FMLA

retaliation claim.[8]

Applying the *McDonnell Douglas* framework, Ms. Milillo has the initial burden of

establishing a *prima facie* case. In order to establish a *prima facie* case, she must point to evidence

sufficient to create a genuine factual dispute about each of the three elements of her retaliation

claim: (1) invocation of an FMLA right; (2) adverse employment action; and (3) causation.   *Id.*

If Ms. Milillo can do so, the burden shifts to Jefferson to "articulate some legitimate,

nondiscriminatory reason" for its decision.   *McDonnell Douglas*, 411 U.S. at 802.   If Jefferson

meets its burden, Ms. Milillo "must point to some evidence. . . from which a factfinder could

reasonably. . . disbelieve [Jefferson's] articulated legitimate reasons."   *Fuentes v. Perskie*, 32

F.3d 759, 764 (3d Cir.1994).

---

[8] We note that in her opposition papers, Ms. Milillo also states that she has "ample evidence to
support her *prima facie* case that her protected leave played *a role* in defendant's decision to
terminate her . . ." (emphasis added).   (Doc. 25 at 30.)   By this reference, plaintiff suggests that
the applicable legal standard here could be mixed-motive as set out in the Title VII cases and
followed in the FMLA interference cases.   As noted *supra*, however, Plaintiff never disputed
Jefferson's characterization of the claim and its appropriate legal standard.   Moreover, she does
not address our Supreme Court's teaching in *University of Texas Southwestern Medical Center v.
Nassar*, 133 S. Ct. 2517 (2013) which makes clear that at least in the context of a Title VII case, a
claim for retaliation must be guided by the principles of but-for causation.   We acknowledge, as
we must, that the context of *Nassar* is Title VII, not the FMLA and we observe that the Third
Circuit has declined, at this point, to provide specific guidance on the question of the applicability
of the but-for standard for retaliation claims in the FMLA context. *See Lichtenstein*, 691 F.3d at
302, n.11. Since Plaintiff is not proceeding under a mixed-motive framework, we need not grapple
with this issue.

In analyzing causation, a court must look at the temporal proximity between the protected activity and the adverse action. A temporal proximity that is "unduly suggestive," could "standing alone. . . create an inference of causality and defeat summary judgment." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir.2007).   However, when that temporal proximity is not "unusually suggestive," we must decide whether "the proffered evidence, looked at as a whole, may suffice to raise the inference." *Id.*

In her papers, Ms. Milillo discussed the taking of leave in February of 2012 to support her husband who was suffering from a serious health condition. This leave would have qualified for FMLA, but she did not invoke these rights until May 2012, after she had applied, been rejected and then reapplied for leave at the urging of Ms. Stanley.   The time period from February 2012 to the date of her non-selection (August 15, 2012) is over six months and clearly  not suggestive of retaliatory animus.   Similarly, we do not construe the taking of seven days leave in May 2012 as "unduly suggestive", particularly under the circumstances of this case.[9]   While there is no bright line rule regarding what constitutes suggestive temporal proximity, we conclude that a three month period is longer than what most courts would consider "unduly suggestive."   *See Blakney v. City of Philadelphia*, 559 F. App'x 183, 186 (3d Cir. 2014) ("We have found that a temporal proximity of two days is unusually suggestive of causation, but have held that a temporal proximity greater than ten days requires supplementary evidence of retaliatory motive." (citations omitted)); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004) (a time period of

---

[9] We acknowledge that plaintiff took FMLA leave on July 16, 2012 and August 3, 2012. Conceding that a temporal proximity between those dates and the date of her August 15 non-selection could well be established, we give scant consideration to this proposition. Ms. Milillo has not directed our attention to it presumably because she does not believe it is pertinent to this question and standing alone, it is insufficient in our view to allow the retaliation claim to go forward.

over two months was insufficient to show retaliatory causation); *McCloud v. United Parcel Serv., Inc.*, 328 F. App'x 777, 781 (3d Cir. 2009) ("The timing of the suspension of benefits (two months after the cone incident, and one month after he had filed the PHRC claim), was not particularly suggestive."); *Urbanic v. Donahoe*, No. CIV.A. 11-805, 2013 WL 1149914, at *6 (W.D. Pa. Mar. 19, 2013) (two to three months was not unusually suggestive); *Allen v. Nutrisystem, Inc.*, No. CIV.A. 11-4107, 2013 WL 1776440, at *6 (E.D. Pa. Apr. 25, 2013) a*ff'd*, 546 F. App'x 98 (3d Cir. 2013) (more than one a month was not unusually suggestive).

In an effort to show further evidence of causation sufficient to raise an inference, the best that Plaintiff can provide falls within her sub-header "A jury could infer pretext for FMLA retaliation because Defendant has shown a bias against employees who took FMLA leave." (Doc. 25 at 55.)   Ms. Milillo points to a co-worker, Tanya Reyes, who also took FMLA leave and was not selected at the same time, as evidence of Defendant's bias toward employees taking FMLA leave.   Ms. Milillo alleges that the circumstances surrounding Reyes' non-selection were "questionable at best, and retaliatory and discriminatory at worst."   (Doc. 25 at 48.)   That may well be, but unsubstantiated speculation of bias against another employee, albeit similarly situated, falls far short of establishing a genuine issue of material fact, particularly against the unrebutted evidence Jefferson has presented showing that three of the five employees who used FMLA were selected for positions in the reorganized department.   (Doc. 23 at 31.)   We observe from the record that Defendant ultimately retained three of its five employees who had taken FMLA leave – Mary Stanley, Tamika Teachey and Nyikeia Phillips.   (Doc. 23 at 13.)   Plaintiff cannot pick and choose one comparator as evidence of Defendant's retaliatory animus, when others who took FMLA leave suffered no adverse employment action.   Furthermore, the fact that Ms. Milillo's

14

supervisor, Ms. Stanley, told her to reapply for FMLA leave after she was denied it is indicative of, not a pattern of antagonism or retaliatory animus regarding her FMLA leave, but rather, an endorsement of it.

Given the above, and without any more evidence provided by Plaintiff, we conclude Ms. Milillo has failed to satisfy her burden under the FMLA retaliation analysis. Therefore, we grant summary judgment in favor of Jefferson on this claim.

## V. CONCLUSION

For the reasons set out above, we deny Jefferson's motion for summary judgment on Counts I and III of Plaintiff's Amended Complaint and grant Jefferson's motion for summary judgment on Count II of Plaintiff's Amended Complaint.

BY THE COURT:

/s/ David R. Strawbridge_____
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE